**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CHARNA WILLIAMS, *et al*.,** | ) | |
|      **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION: 1:22-00112-KD-B** |
| | ) | |
| **STATE FARM FIRE AND CASUALTY** | ) | |
| **COMPANY,** | ) | |
|      **Defendant.** | ) | |

**ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment (Docs. 39-40), Plaintiffs' Response (Docs. 47, 48), and Defendant's Reply (Doc. 50); and Defendant's Motion to Exclude Testimony of Plaintiffs' expert (Neil B. Hall, P.E.) from consideration on summary judgment (Doc. 41), Plaintiff's Response (Doc. 46), Defendant's Reply (Doc. 49), and the February 16, 2023 Daubert evidentiary hearing regarding Hall.

**I.    Findings of Fact**[1]

This litigation is about an insurance dispute -- the amounts allegedly owed.  Specifically, Plaintiffs Charna and Brandon Williams (Williams, Mrs. Williams, or Mr. Williams) own a single-family residential property located at 7143 Wynncliff Drive in Mobile, Alabama (the property). (Doc. 1).  In 2020, the property was insured under a homeowners policy issued by Defendant State Farm Fire and Casualty Company (State Farm). (Doc. 40-1 (Policy)). The policy has a $484,000 limit of liability for the dwelling and a hurricane deductible of 2% ($9,680). (Id. at 3). The policy

---

1 The facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998-999 (11ᵗʰ Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11ᵗʰ Cir. 2000).

pays the Actual Cash Value (ACV) of the damages and the Replacement Cost Value (RCV) upon completion of the repairs. (Id. at 30).

On April 7, 2021, the Williams reported a claim to State Farm alleging damages due to Hurricane Zeta (October 28, 2020), and on April 11, 2021 spoke with State Farm Claim Specialist Steve Weber (Weber). (Doc. 40-2 at 2, 4, 8 (Decltn. Henderson) (Claim File Ex. B); Doc. 40 at 3). The Williams reported damages to the roof, shutters, gutters, front deck, and living room.  (Id.)

On April 21, 2021, attorney Patrick Montgomery with the Morgan & Morgan law firm sent a letter of representation to State Farm on behalf of the Williams; included with the letter was an estimate from Plaintiffs' adjuster ATA Loss Consulting for $220,796.45. (Doc. 40-2 at 3, 21-69 (Decltn. Henderson (Claim File Ex.)). The estimate included replacing the crown molding in most of the house, many ceilings, drywall of various interior walls, the entire composition shingle roof, over 300 feet of gutters, 28 windows, a screen door, and a garage door, among other items. (Id.)

State Farm Claim Specialist Weber scheduled an inspection for April 27, 2021. (Doc. 40-2 at 7 (Decltn. Henderson (Claim File Ex)). Weber met with Mrs. Williams and inspected the property on April 27, 2021. (Id. at 5-8). Weber noted damage to nine (9) shingles on the roof and water damage from wind-driven rain on the ceilings of the living room and playroom. (Id.; Doc. 40 at 4). Weber did not observe storm damage on the home's exterior. (Id.) During the inspection, Mrs. Williams pointed out damage by a fireplace, a portion of the roof on the front elevation that looked "caved in" "a little bit," and a damage in an upstairs bedroom. (Doc. 40-3 (Dep. C.Williams at 25)). Weber's opinion was that "a roof repair is warranted" based on the wind damaged shingles he observed and noted. (Doc. 40-2 at 7 (Decltn. Henderson (Claim File Ex.)). Weber informed Mrs. Williams the State Farm estimate did not exceed the deductible. (Id. at 7).

2

On April 27, 2021, Weber completed the initial State Farm estimate (Id. at 12-19). This estimate included repairs with a replacement cost value (RCV) of $1,522.30 for Coverage A – Dwelling. (Id. at 3, 12). The repairs in the estimate included the following: 1) remove and replace 10 shingles. (Id. at 13); 2) in the living room, removal/replacement of nine (9) square feet of ceiling drywall and ceiling insulation, prime and paint 25 square feet of the ceiling, paint the entirety of the ceiling, mask the wall underneath the ceiling to facilitate repairs and contents manipulation to facilitate repairs. (Id. at 14-15); 3) in the playroom, prime and paint four square feet of ceiling, paint the entirety of the ceiling and contents manipulation to facilitate repairs. (Doc. 40-2 at 15 (Decltn. Henderson (Claim File Ex.)); 4) half a truckload of debris removal (Id. at 16); and 5) labor minimums for roofing, drywall, insulation, and general labor. (Id.; Doc. 40 at 4-5). After subtracting depreciation of $74.16, the actual cash value (ACV) of the repairs under Coverage A – Dwelling totaled $1,448.14. (Doc. 40-2 at 12 (Decltn. Henderson (Claim File Ex.)). This amount did not exceed the policy deductible of $4,840.00 and no payment was due at that time. (Id.) On April 27, 2021, Weber mailed the State Farm estimate to the Williams with a letter explaining that the loss did not exceed the policy's deductible so no ACV payment was available. (Id. at 70-71).

On June 17, 2021, an attorney ("Jessica") with the Morgan & Morgan law firm contacted State Farm requesting to speak with the claim handler for a status of the Williams' claim. (Id. at 4-5). On June 26, 2021, Weber emailed the State Farm estimate to Jessica Nation at Morgan & Morgan. (Id. at 9).

On July 3, 2021, the claim was reassigned to Claim Specialist Walter Gary Jackson (Jackson). (Id. at 3). Jackson has been an independent adjuster for State Farm for 38 years, as well as for other insurers, having inspected and adjusted thousands of residential property damage

claims, including hurricane and storm-related claims. (Doc. 40-4 (Decltn. Jackson at ¶¶ 2-3)).  In July 2021, Jackson contacted ATA Loss Consulting and scheduled a July 28, 2021 reinspection. (Id. at 15-16 (Decltn. Jackson Ex.)).

On July 28, 2021, Jackson attempted to inspect the property accompanied by Ron Goode of ATA Loss Consulting. (Id. at 15).  Jackson informed Goode that his intent was to view any damage ATA felt was not addressed in the State Farm estimate. (Id.) Jackson believed Goode was unprepared to point out additional damage to Jackson. (Id.; Doc. 40-4 (Decltn. Jackson at ¶5)).  As a result, Jackson departed the Williams' property, called the ATA office to advise he would be contacting the attorney, and left a voicemail for Nation requesting a return phone call. (Doc. 40-4 at 15 (Decltn. Jackson Ex.)). Jackson left another voicemail for attorney Jessica Nation on August 2, 2021. (Id.) On August 3, 2021, attorney Nation emailed Jackson that Goode was prepared for the inspection. (Doc. 40-4 at 22 (Decltn. Jackson Ex.)). On August 8, 2021, Jackson sent a letter to attorney Nation stating that State Farm would give the claim further consideration once it received: "[]an option to meet a representative who is familiar with and aware of the additional damage being claimed by your firm. We request this representative be prepared to present and discuss all issues you have concerns with while at the subject property." (Id. at 26-28). On August 10, 2021, Nation emailed Jackson requesting a second inspection be scheduled. (Id. at 21).

On September 29, 2021, Jackson met with Nicholas Currie of ATA Loss Consulting and inspected the Property. (Doc. 40-4 (Decltn. Jackson at ¶5) and 11-12 (Ex)). Currie informed Jackson that he did not feel comfortable accessing the steep roof. (Doc. 40-4 (Decltn. Jackson at at ¶ 5)). Jackson explained that if State Farm was going to consider any additional damage to the roof not already included in its estimate, then ATA would need to present evidence of such

4

damage. (Id.) Currie then informed Jackson that ATA previously took photographs of the roof, and that he would send those photographs to Jackson for his consideration in revising the State Farm estimate regarding the roof. (Id.) Jackson noted that Currie was unable to present any wind-related damage to the exterior caused by Hurricane Zeta. (Id.) On the interior, Jackson's inspection revealed some additional painting, masking and contents manipulation that was warranted to add to the State Farm estimate. (Id. and 7-9 (Decltn. Jackson Ex.))). Currie pointed out cracks in the miter joints throughout the home. (Doc. 40-4 (Decltn. Jackson at ¶5)). However, Jackson pointed out paint within those cracks which would be caused by painting the trim while the crack was already present. (Id.)

On October 19, 2021, Jackson reviewed the photographs of the Williams' roof submitted by ATA Loss Consulting. (Id. at ¶6 and 9-10 (Decltn. Jackson Ex.)). Jackson found no evidence that revealed more damage from wind that was not already addressed on the State Farm estimate. (Id.) Jackson observed the following roof damage in the photographs ATA submitted to State Farm: 1) recent repair around a roof vent on a rear slope; 2) creased laminate tab shingle; 3) mechanical damage to multiple shingles; 4) diagonal crease in another shingle not consistent with wind; 5) old damage to multiple shingles; 6) foot damage near a valley and 7) substance such as tar on some shingles. (Id.)

On October 20, 2021, attorney Nation emailed State Farm requesting a status of the claim. (Doc. 40-4 at 20 (Decltn. Jackson at ¶5)). On October 26, 2021, Jackson called Nation and left a voicemail requesting the aerial video of the roof Currie mentioned. (Doc. 40-4 at 9 (Decltn Jackson Ex.)). Jackson left another voicemail on November 3, 2021, explaining that he was still waiting on

Currie's aerial video of the roof. (Id. at 8). On November 8, 2021, attorney Nation emailed Jackson inquiring on what manner to send the aerial video to State Farm. (Id. at 19).

In November 2021, Jackson revised the State Farm estimate to reflect the additional damage he observed. (Id. at 6-7, 31-51; Doc. 4-4 (Decltn. Jackson at ¶7)). This estimate included repairs with an RCV of $4,463.89 for Coverage A – Dwelling (SF 0550). (Doc. 40-4 at 34 (Decltn. Jackson Ex.)). This amount did not exceed the policy deductible of $4,840.00 and no payment was due at that time. (Doc. 40-4 at 29 (Decltn. Jackson Ex.)). Jackson emailed a November 8, 2021 denial letter to attorney Nation, citing the policy exclusionary language concerning loss due to wear and tear, settling, cracking, shrinking, bulging or expansion of walls, floors, roofs, or ceilings; and stated that Currie did not present any additional covered damage to the insureds' roof that was not already included in the estimate. (Id. at 29-30). Jackson explained that because the revised State Farm estimate did not exceed the policy deductible, State Farm would not issue a payment to the Williams. (Id.)

Nation requested a copy of the Williams' State Farm policy on December 1, 2021. (Doc. 40-4 at 18 (Decltn. Jackson Ex.)). On December 7, 2021, Claim Specialist Joanne Dulwick (Dulwick) emailed Nation that she had requested a certified copy of the policy, and Dulwick requested a rush on sending the policy. (Id. at 6).

On December 10, 2021, Claim Specialist George Codina (Codina) reviewed the file and emailed the certified copy of the policy to Nation. (Id. at 5, 23-25). On December 13, 2021, attorney Nation replied via email and stated that she was not in agreement with State Farm's most recent estimate and claim decision. (Id. at 17). On January 31, 2022, Codina left a voicemail for attorney Nation in which he requested a settlement demand. (Id. at 5).

6

Due to the foregoing, on February 8, 2022 the Williams filed a Complaint against State Farm in the Circuit Court of Mobile County, alleging breach of contract and bad faith relating to State Farm's handling of their homeowners policy claim for damages incurred to their property. (Doc. 1-2). On March 10, 2022, State Farm removed the case to this Court alleging federal diversity subject matter jurisdiction.  (Doc. 1).  Now pending is State Farm's motion for summary judgment and motion to exclude the testimony of the Williams' expert witness Hall.  However, as noted *supra*, on summary judgment the Williams concede that State Farm's motion is due to be granted on their bad faith claim (Doc. 47) and thus, it is **ORDERED** that the bad faith claim is **DISMISSED.**  This leaves only the breach of contract claim before the Court.

## II.   <u>Conclusions of Law -- Motion to Exclude</u>

### A.   <u>Overview</u>

As to the breach of contract claim, State Farm argues there is no admissible evidence that any of the damage to the property was caused by Hurricane Zeta.  In support, State Farm has filed a motion to exclude the opinions and testimony of the Williams' causation expert, Neil B. Hall, P.E. (Hall), arguing that his methodology is unclear and his opinion fails to assist the factfinder. (Doc. 46-4 - Doc. 46-6).

The Williams designated and disclosed Hall as providing expert testimony concerning the cause and scope of the damage to their property, as well as recommending certain necessary repairs.  (Doc. 46-3 (Plfs' Designation of Experts)).  Per the Williams:

> Hall will provide testimony regarding the cause, scope, and certain repair methodologies associated with the property damage loss....also provide testimony regarding the appropriate investigation and inspection methodologies associated with property damage loss .... Hall bases his conclusions on .... his education, training[,] and experience, in addition to inspections of the Insured Property[,] his education, his review of documents generated by Defendant, as well as his expert

> knowledge and applying his expert knowledge and experience in determining causation of damages to residential and commercial properties, and repair and replacement methods....
>
>                                    \*\*\*
>
> ...Hall will testify he utilized his industry's reasonable and accepted methodology reaching his conclusions....

(Doc. 46-3 at 2-3). In his September 2022 Initial Report (Building Damage Assessment) following an August 11, 2022 site inspection, Hall opined that the property was damaged by wind and the ensuing penetration of water. (Doc. 46-4). Hall provided the following recommendations:

> -Remove and replace the water-damaged gypsum wallboard (ceiling and wall), crown molding and attic insulation on the south side of the Living Room fireplace.
>
> -Remove and replace the water-damaged gypsum wallboard (ceiling and wall), crown molding and attic insulation in the second floor southeast bedroom, second floor northeast bedroom and the game room above the garage.
>
> -...[R]epair the post-storm condition of the roof (wind-blown debris and numerous locations with missing shingle tabs or unsealed shingles) it is necessary for a roofer to conduct a complete inspection simply to identify all damage locations and then effect repair. It may be technical[ly] feasible to replace damaged shingles without creasing or otherwise damaging other shingles, but the result will be a mismatch in color even if the same shingles are still available. At any rate the source of the leaks above the living room, second floor bedrooms and the game room above the garage have not been identified. In order to ensure the roof is restored to a watertight condition, I recommend the full replacement of the roof shingles and underlayment.

(Doc. 46-4 at 3). In arriving at the recommendations in his Report, Hall stated that he reviewed the following to assist his understanding and to determine the nature, cause, and extent of damage as well as to recommend a scope of work to restore the building to a pre-loss condition:

- NHC Tropical Cyclone Report, Hurricane Sally, 11-17 September 2020
- NHC Tropical Cyclone Report, Hurricane Zeta, 24-29 October 2020
- LGN Real Estate Appraisal dated April 21, 2020
- ATA Hover Report dated April 27, 2021
- ATA Wind Estimate printed May 27, 2021
- ATA Wind Photos taken April 26, 2021
- State Farm cost estimate printed April 27, 2021
- State Farm cost estimate printed November 10, 2021
- Mobile County Property Search (https://esearch.mobilecopropertytax.com/Property/View/3320775)
- 2012 International Residential Code with local amendments
- 2012 International Existing Building Code with local amendments

(Id. at 2). At the inspection, Hall observed interior water stains and damage, used an "FLIR E53 infrared camera" to scan the ceiling for thermal anomalies, looked for water trails and penetration, observed mold growth.  (Id. at 2-3). Hall also reviewed ATA drone photographs from April 26, 2021 showing wind-borne debris and missing shingle tabs, as well as other ATA photographs dated May 24, 2021 showing unsealed shingles.  (Id. at 3 (Doc. 46-5, 46-7)).  Per Hall, his "report was based on my knowledge and experience in the field of building construction."  (Id. at 4). Thus, the Williams -- based on the foregoing -- offer Hall as "specializ[ing] in the investigation of building performance, structural health, and failure analysis" and providing expert testimony regarding the cause of the damage, and recommendations for repair, to their property.

As such, the Court first addresses the motion to exclude, as such impacts the Williams' breach of contract claim on summary judgment. Specifically, State Farm moves to exclude Williams' expert witness Hall, as failing to satisfy the minimum Rule 702 admissibility standards under the Federal Rules of Evidence and/or Daubert v. Merrell Dow Pharm., 509 U.S. 579 (1993).[2]

---

2 In Daubert, 509 U.S. 579, the U.S. Supreme Court imposed a special duty on trial judges pursuant

B.      **Standard of Review**

"While Federal Rules of Evidence 401 and 402 provide for the liberal admission of relevant evidence, Rules 403, 702, and 703 mitigate against this general policy by giving trial courts discretion to exclude expert testimony that is either unreliable or irrelevant." Johnson v. Louisville Ladder, 2008 WL 5122261, *7 (S.D. Ala. Nov. 14, 2008) (citing Allison v. McGhan Med. Corp., 184 F.3d 1300, 1310 (11th Cir. 1999)). In Kilpatrick v. Breg, Inc., 613 F.3d 1329, 1335 (11th Cir. 2010), the Eleventh Circuit explained the standard in Daubert as follows:

> Daubert requires that trial courts act as "gatekeepers" to ensure that speculative, unreliable expert testimony does not reach the jury. 509 U.S. at 597, n. 13.... The trial court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho [Tire Co., Ltd. v. Carmichael], 526 U.S. 137, 152 ... [(1999)].

Similarly, Rule 702 governs the admission of expert testimony in federal court, and provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

See Knepfle v. J-Tech Corp., 48 F.4th 1282, 1293-1294 (11th Cir. 2022) (same). Applying these principles, "a district court should determine the admissibility of expert testimony by considering these three factors: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently

---

to Rule 702, requiring the judge to act as a "gate-keeper" to ensure that scientific evidence is both reliable and relevant before it is admitted. Id. Daubert also requires a special inquiry into relevance, calling on the trial court to ensure that expert testimony logically advances a material aspect of the proposing party's case. Allison v. McGhan Med. Corp., 184 F.3d 1300, 1312 (11th Cir. 1999). In sum, there must be a valid scientific connection between the testimony and the disputed facts in the case (i.e., "fit"). Id.

reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." Id. at 1294 (citing Tuscaloosa v. Harcros Chem., Inc., 158 F.3d 548, 562 (11th Cir. 1998)).  See also Rink v. Cheminova, Inc., 400 F.3d 1286, 1291-1292 (11th Cir. 2005). "The proponent of the expert testimony bears the burden of showing, by a preponderance of the evidence, that the testimony satisfies each prong." Hendrix ex rel. G.P. v. Evenflo Co., Inc., 609 F.3d 1183, 1194 (11th Cir. 2010).

However, "'[t]he inquiry envisioned by Rule 702 is ... a flexible one,' *Daubert*, 509 U.S. at 595 ... courts should not elevate themselves 'to the role of St. Peter at the gates of heaven, performing a searching inquiry into the depth of an expert witness's soul—separating the saved from the damned[,]' *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1321 (11th Cir. 1999) ... '[s]uch ... would inexorably lead to evaluating witness credibility and weight of the evidence, the ageless role of the jury.' *Id."* Piazza v. Target Corp., 2022 WL 16923867, *1 (M.D. Fla. Nov. 14, 2022).

## C.    **Discussion**[3]

---

3 Repeatedly, State Farm urges application of proposed amendments to Rule 702 of the Federal Rules of Evidence.  (Doc. 41 at 17-19 (that the reliability requirements, by a preponderance of evidence standard, are questions of admissibility not credibility/weight to be decided by the judge, not the jury).  On June 7, 2022, the Judicial Conference Committee on Rules of Practice and Procedure approved a proposed amendment to Rule 702, which governs the admissibility of expert witness testimony. This proposed amendment must still be approved by the U.S. Supreme Court and Congress before taking effect and will only take effect (if approved) on 12/1/23. As such, the proposed amendment is inapplicable at present. State Farm's companion argument cites Union Ins. Co. v. Blakeney Palmer Co., LLC, 2015 WL 540788 (N.D. Ala. Sept. 16, 2015) -- a case which involved expert Hall.  In that case, the court denied the motion to exclude Hall as an expert, finding that any issues with his methodology were issues of weight and credibility (not admissibility) -- matters for the jury to resolve (*e.g.*, cross-examination). From this, State Farm argues that Union Ins. Co. was "incorrect" because of the proposed amendment to Rule 702. The Court is not persuaded at this time.

Additionally, the Williams submitted the entirety of Hall's deposition in response to State Farm's motion to exclude (Doc. 46-6 (230 pages)), yet only cite pages 23, 39-41, 44-46, 57-59, 62-63, 70-72, 81-82, and 107-110.  The Court's review of Hall's deposition is limited to the pages cited by the Williams (and the same holds true for State Farm). This is because "[t]here is no burden upon the ... court to distill every

As noted *supra*, State Farm seeks to exclude from this Court's consideration on summary judgment the Williams' expert witness Hall -- namely, his opinions and testimony contained in his Report (Doc. 41-1/Doc. 46-4) and deposition (Doc. 41-2; Doc. 46-6)) regarding causation of the damage and the scope of the damage to the property including certain recommended repairs. As grounds, State Farm cites Fed.R.Evid. Rule 702 and argues Hall's causation opinion is: 1) inadmissible as the methodology is not sufficiently reliable or an accepted method in the scientific community; and 2) fails to assist the factfinder to determine the extent of property damage.  The parties addressed the motion at a February 16, 2023 Daubert hearing.

**First**, as noted *supra*, the expert must be qualified to testify competently regarding the matter he intends to address. An expert's scientific training, education, or field experience may qualify him to testify on certain matters. Knepfle, 48 F.4th at 1294 (citing United States v. Frazier, 387 F.3d 1244, 1260-1261 (11th Cir. 2004)). The parties do not dispute Hall's qualifications, and the Court's review of his experience, resume, and hearing testimony, indicates that he is qualified.

**Second**, for reliability, courts assess an expert's reasoning or methodology, which "requires a more thorough inquiry."  Knepfle, 48 F.4th at 1294.  As summarized in In re Zantac (Ranitidine) Prod. Liability Lit., 2022 WL 17480906, *11 (S.D. Fla. Dec. 6, 2022):

> ... "whether the reasoning or methodology underlying the [expert] testimony is scientifically valid and ... whether that reasoning or methodology properly can be

---

potential argument that could be made based upon the materials before it on summary judgment." Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir.1995). It is not the duty of the Court to scour the record to find specific references the parties *may* deem relevant -- "[j]udges are not like pigs, hunting for truffles buried in briefs." United States v. Dunkel, 927 F.2d 955, 956 (7th Cir.1991). And as summarized in Allstate Ins. Co. v. Regions Bank, 2015 WL 4073184, *1 note 1 (S.D. Ala. Jul. 2, 2015): ."... dumping vast collections of documents into the court file along with dispositive-motion briefs is disfavored. Indeed, the Federal Rules of Civil Procedure specify that '[t]he court need consider only the cited materials' in the summary judgment record. Rule 56(c)(3) ... The undersigned will not sift through these massive evidentiary submissions searching for uncited factual tidbits that might bolster the position of one side or the other....." (internal citations omitted).

applied to the facts in issue." *Chapman*, 766 F.3d at 1306 (internal quotation marks and citation omitted). The court "must determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation by a genuine scientist." *Id.* (internal quotation marks and citation omitted); *see also McClain*, 401 F.3d at 1244 (explaining that an "expert's assurances that he has utilized generally accepted scientific methodology are insufficient" and that a court must do more than simply take "the expert's word for it" (alteration, internal quotation marks, and citation omitted)) ...

Generally, four (4) factors guide courts and "are meant to help, but ... are not a definitive or exhaustive checklist[,]" as "[a]ll four .... may not even apply ...." Id. (citing Champan, 766 F.3d at 1305 (quoting United Fire & Cas. Co. v. Whirlpool Corp., 704 F.3d 1338, 1341 (11th Cir. 2013)). Namely: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." Knepfle, 48 F.4th at 1294 (citing Frazier, 387 F.3d at 1262)). The methodology by which an expert reaches his/her conclusion must be sufficiently reliable as determined by a Daubert inquiry. Id. The Williams plaintiffs, as the proponents, bear the burden of showing by a preponderance of the evidence that Hall's testimony satisfies this factor. Hendrix ex rel., 609 F.3d at 1194. However, the Eleventh Circuit holds that "these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis." Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003).

State Farm argues that Hall's opinions are due to be excluded because he used no methodology, or if he did, it is entirely "unclear" (and "not sufficiently reliable or an accepted method in the scientific community[]" (Doc. 41 at 3-4, 13)), to conclude that the Hurricane Zeta

13

damage to the Williams' property requires full replacement of the roof shingles and underlayment.

State Farm contends that as such, Hall's causation theory cannot be tested. Specifically:

> ... it is unclear what methodology Hall did employ to reach his conclusion that damage from Hurricane Zeta required full replacement of the roof shingles and underlayment. Hall's opinion that Hurricane Zeta damaged the shingles relies completely on photographs taken by an investigator employed by ATA Loss Consulting. Hall did not inspect the shingles himself or physically go on the roof. As a result, Hall did not take any measurements or prepare any diagrams demonstrating specific areas of shingle damage. Though Hall opined all the shingles needed to be replaced, Hall did not quantify the number of shingles lifted or unsealed, or the percentage of shingles of the roof area that were determined to be damaged. In his report, he attached photographs of five lifted shingles. Hall did not know the number of lifted shingles in the ATA Loss Consulting reports until he was asked to tally them (39) in his deposition, which occurred after his report was completed and submitted to Defendant. Further, he could not say which slope any of these lifted shingles were actually on, which stands to reason that the photographs of the shingles Hall relies upon could represent the same shingles in multiple photographs.

> As discussed above, Hall took no measurements and collected no data to support his opinion that windblown water had infiltrated the Property. Hall did not take any measurements or prepare any diagrams in an effort to correlate interior damage to specific areas where there might be roof damage, i.e. lifted or unsealed shingles. When asked whether the ceiling stains near the fireplace correlated with any particular failure in the roof, Hall responded that he did not measure the distance. Further, Hall conceded he was unsure of where that particular failure might be, that he "lost the trail." As a result, there is no possible way to link his conclusion that roof damage caused by Hurricane Zeta also caused any interior damage.

> ... Regardless of his qualifications, Hall did not employ them in a reasonable and ... reliable manner to reach his conclusion that the impact from Hurricane Zeta caused the extent of the property damage. As a result of the lapses in his methodology, Hall's causation theory cannot be tested and is not reliable ...
>                                         ***
> ... Beyond reviewing photographs taken by another investigator, Hall employed no reliable methodology for determining what caused the roof damage or the extent of the damage. Hall employed no reliable methodology to determine which shingles were represented as lifted in the photographs ... Hall employed no reliable methodology to correlate the interior damage to areas of roof damage, which he did not and could not specifically identify since he did not go on the roof. Here, Hall assumes, because he "knows his roofs" the jury will just take his word for it ...

14

(Doc. 41 at 13-15). In otherwords, per State Farm, because Hall failed to identify any methodology, his damage conclusions are necessarily rooted in his personal opinion and little more such that allowing his testimony would require the Court to "take his word for it" (*ipse dixit*).  (Id. at 15). Thus for State Farm, "Plaintiffs fail to demonstrate how Hall connected the dots between the documents he reviewed and his conclusion as to the extent of Plaintiffs' damage."

At the outset, Hall identified his conclusion through reasoning based on his professional experience.  And while a <u>Daubert</u> inquiry focuses on principles and methodology -- versus the conclusions they generate -- "conclusions and methodology are not entirely distinct from one another."  <u>In re Zantac</u>, 2022 WL 17480906 at \*44. Indeed, the advisory committee notes for Rule 702 state that: **"[i]**f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts**. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it'." Fed. R. Evid. 702 advisory committee notes (2000 amends.)). <u>See</u>, <u>e.g.</u>, <u>United States v. Frazier,</u> 387 F.3d 1244, 1260-1261 (11th Cir. 2004) (same); <u>Payne v. C.R. Bard, Inc.,</u> 606 Fed. Appx. 940, 942-943 (11th Cir. 2015) (quoting <u>United States v. Frazier,</u> 387 F.3d 1244 at 1261 (11th Cir. 2014) (*en banc*) (same). A review of the record indicates that Hall's opinions are based, in part, on his decades of *professional* experience (as a licensed architect, as a certified infrared thermographer with almost 20 year of experience using thermal imaging cameras, as a certified microbial mold remediation expert, as a licensed professional civil engineer with decades of experience in hurricane damages, as a specialist in building damage assessments and forensic engineering work for over 25 years, etc.).  As noted *supra*, such is not *inherently* improper.

Additionally, the Williams plaintiffs explain that Hall's opinion is based not just on his "exhaustive experience and ....expertise and qualification" but also "his hands on investigation of the property, review of previous investigations, and relevant literature and material including material data information on shingles[]" -- "the standard for these types of investigation[]" and "almost exactly the same thing that the defendant's expert did in this matter."  (Doc. 46 at 11). Moreover, at the <u>Daubert</u> hearing Hall testified that he reviewed the following in preparing his report and opinion: National Hurricane Center Cyclone reports for Hurricane Sally and Seta, a LGN Real Estate Appraisal, ATA Hover Report, ATA Wind Estimate, ATA Wind Photograph, Summary Sheets, State Farm cost estimates (4/27/21 and 10/10/21, a property search in Mobile County, the 2012 building codes, and ATA photographs (many hundreds) and computerized walk-through digital analysis of the property's interior) (Doc. 46-6 at 6 (Dep. Hall at 23)), his inspection of the property August 11, 2022, and later a home inspection report by Alliance Inspection Services) (Doc. 46 at 11-13).  Further, Hall testified as to how his experience and investigation lead to his conclusions, why such provides a sufficient basis for his opinions, and how he reliably applied such to the facts. And Hall expounded upon his Rule 26 expert report, identifying the methodologies used. Hall also provided additional information in support of his findings. Hall's <u>Daubert</u> hearing testimony thus bridged any purported analytical gap. *Cf.* <u>General Elec. Co. v. Joiner</u>, 522 U.S. 136, 146 (1997) ("[t]rained experts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered[]"). Thus, the Court finds that the Williams have carried their burden -- to prove by a

16

preponderance of the evidence -- that Hall employed a reliable methodology in forming the opinions contained in his expert report.

**Third**, the Court considers helpfulness -- whether Hall's testimony assists the trier of fact through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.  "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person. ... Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments. *See* 4 Weinstein's Federal Evidence § 702.03[2] [a]." Frazier, 387 F.3d at 1262-1263 (internal citations omitted).

State Farm's motion -- as to a lack of helpfulness -- is rooted in an alleged lack of correctness or persuasiveness in Hall's opinions (versus that of its expert).  However, "[d]isputes over the relative persuasiveness of either sides' reliable evidence 'should be tested by the adversary process—competing expert testimony and active cross-examination—rather than excluded from a jury's scrutiny.'" In re Abilify (Aripiprazole) Products Liability Litigation, 299 F.Supp.3d 1291, 1373 (N.D. Fla. 2018). See also e.g., United States v. Ala. Power Co., 730 F.3d 1278, 1282 (11th Cir. 2013) (for Daubert, the Court's "gatekeeping role .... is not intended to supplant the adversary system or the role of the jury: 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate mean of attacking shaky but admissible evidence[]'"). The undersigned will neither supplant nor usurp the jury's role in evaluating Hall's opinions simply because "experts hotly dispute Plaintiffs' general causation evidence[]" as "a hot dispute is not a basis for excluding Plaintiffs' expert[']s opinions." In re

17

Abilify, 299 F.Supp.3d at 1372.[4] In otherwords, "[t]o the extent that ... [State Farm still believes that Hall's] opinions have gaps ... [State Farm] may counter those opinions through cross-examination and the presentation of contrary evidence. *See Daubert*, 509 U.S. at 596." Henderson v. Goodyear Dunlop Tires N.A., Ltd., 2013 WL 5729377, *6 (M.D. Ala. Oct. 22, 2013). As summarized in Fisher v. Bofford, 2019 WL 9050568, *5 (M.D. Ala. Dec. 4, 2019):

> There is a range in which different expert witnesses may reasonably differ. *Kumho Tire Co.,* 526 U.S. at 153 (citing *Daubert*, 509 U.S. at 596). Simply asserting that Defendants' expert uses a method that does not conform with Plaintiffs' expert does not make it faulty. *Id*. The Supreme Court has recognized that experts may reasonably differ on issues of science and conclusions, and that these differences should be admitted to aid the trier of fact in deciding the issues. *Kumho Tire Co.,* 526 U.S. at 153; *see also Globetti v. Sandoz Pharm., Corp*., 111 F. Supp. 2d 1174, 1177 (N.D. Ala. 2000) (stating that it is the role of the finder of fact, not the judge, to decide whether an expert's opinion is correct). ...

Upon consideration, Hall's Daubert hearing testimony supports a finding that his causation and damage opinions -- based on his qualifications, extensive knowledge, experience and expertise, methodology, and more -- will be helpful to the jury.  The Court is satisfied that the Williams have shown, by a preponderance, that Hall's testimony will assist the trier of fact.

---

4 As summarized in In re Abilify, 299 F.Supp.3d at 1372:

> When ruling on challenges to expert testimony under Rule 702 and *Daubert*, the Court is charged with the responsibility of acting as a gatekeeper, excluding "junk science" and other unreliable information, *see Joiner, 522 U.S. at 153, 118 S.Ct. 512*, but allowing—for a jury's consideration—testimony that derives from sound scientific knowledge, methodologies, and reasoning, *see Daubert, 509 U.S. at 590, 113 S.Ct. 2786*. While the *Daubert* inquiry must be "rigorous," it "is not intended to supplant the adversary system or the role of the jury." *Rink, 400 F.3d at 1291, 1293 n.7*. Again, only the jury may determine "where the truth in any case lies" and the court "may not usurp this function." *See Frazier, 387 F.3d at 1272*. Accordingly, a district court may not "evaluate the credibility of opposing experts" or "the persuasiveness of competing scientific studies." *Quiet Tech., 326 F.3d at 1341*. For *Daubert* purposes, the Court's duty is limited to ensuring that a proposed expert's testimony is based on "sound and reliable evidence." *Frazier, 387 F.3d at 1272*.

In sum, the Court finds that Hall is qualified to competently testify regarding the matters he intends to address; his methodologies are sufficiently reliable under <u>Daubert</u>; and his testimony will assist the trier of fact. Thus, State Farm's Motion to Exclude to Hall is **DENIED**.

## III.     Conclusions of Law -- Summary Judgment (Breach of Contract)

## A.     Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Rule 56(c) provides as follows:

*(c) Procedures*

*(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

*(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

*(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

*(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c).

The movant must demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence and the inferences from that evidence in the light most favorable to the nonmovant. Jean–Baptiste v. Gutierrez, 627 F.3d 816, 820 (11th Cir. 2010). The movant "always bears the initial responsibility of informing the district court of the basis for its motion." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. Id. Alternatively, a movant who does not have a trial burden of production can assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact. Fed. R. Civ. P. 56(c)(1)(B); see also Fed. R. Civ. P. 56 Adv. Cmte. Note ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials.... [A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact."). If the movant meets its burden, the burden shifts to the nonmoving party to establish -- with evidence beyond the pleadings—that a genuine dispute material to each of its claims for relief exists. Celotex, 477 U.S. at 324. A genuine dispute exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor. Waddell v. Valley Forge Dental Assoc., 276 F.3d 1275, 1279 (11th Cir. 2001).

**B.**     **Conclusions of Law**

As noted *supra*, State Farm moves for summary judgment on the Williams' breach of contract claim. "A contract of insurance, like other contracts, is governed by the general rules of contracts." Ware v. Nationwide Ins. Co., 2013 WL 1680514, *5 (N.D. Ala. Apr. 12, 2013) (quoting Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co., 817 So.2d 687, 691 (Ala. 2001)). In Alabama, the

elements for a breach of contract claim are: 1) the existence of a valid contract; 2) plaintiff's performance under the contract; 3) defendant's nonperformance; and 4) damages. ASF Global, LLC v. Soft-Tex Intl, Inc., 2022 WL 4474911, *11 (S.D. Ala. Sept. 23, 2022) (citing Dupree v. PeoplesSouth Bank, 308 So. 3d 484, 490 (Ala. 2020); Shaffer v. Regions Fin. Corp., 29 So. 3d 872, 880 (Ala. 2009)).

Specifically, State Farm's motion focuses on contractual damages and the Williams' purported lack of causation evidence to support same: "State Farm is entitled to summary judgment on the Williams' claim of breach of contract because they have no admissible evidence that any of the damage to their property that they are claiming was caused by Hurricane Zeta." (Doc. 40 at 1). That, "as a matter of law the Williams cannot recover on their contract claim because they have no admissible evidence of the cause or amount of damages incurred because of any alleged breach of the policy." (Doc. 40 at 14). State Farm's motion is rooted on the *presumed* exclusion of Hall's expert testimony to then argue that the Williams "are unable to establish a necessary element ... for breach of contract." (Id. at 17). State Farm then references its expert, Mulder, and his damage opinion regarding the Williams' property, to assert that it "*has* offered sufficient evidence of nonliability, including evidence from State Farm's three inspections -- two by its adjusters and one by an independent professional engineer -- all three of which were consistent in finding that the damage Hurricane Zeta caused to Plaintiffs' Property has been included in the State Farm estimate." (Id. at 17-18 (emphasis in original)).

In response, the Williams reference Hall's opinion as reliable and helpful and assert that in contrast, State Farm's adjusters and engineer "are not credible ... and will undoubtedly be rejected

by jury and seen for what they are...."  Following briefing, the Williams also rely on Hall's testimony at the February 16, 2023 Daubert evidentiary hearing.

As explained *supra*, State Farm's motion to exclude Hall as a causation and damage expert has been denied. This leaves battling experts on these issues -- Hall v. Mulder.  Given the parties' vigorous dispute over the opinions of these experts for their respective positions on the breach of contract claim, the claim should be determined by the fact finder.  This is because the differing expert opinions underscore the existence of genuine issues of material fact as to the necessary elements for the breach of contract claim (causation/damage). "Defendants have moved for summary judgment on general causation under *Daubert* based on Plaintiffs' lack of admissible expert testimony. Because the Court has found that most of Plaintiffs' evidence on general causation ... satisfies Rule 702 and Daubert, there exists a genuine dispute of material fact on the issue of .... caus[ation] ... Therefore, Defendants' Motion for Summary Judgment  ... is due to be denied." In re Abilify, 299 F.Supp.3d at 1373.  Thus, State Farm's motion as to the Williams' breach of contract claim is **DENIED.**

IV.   **Conclusion**

It is **ORDERED** that: State Farm's Motion to Exclude Hall (Doc. 41) is **DENIED**; and 2) State Farm's motion for summary judgment (Docs. 39-40) is **MOOT in part** and **DENIED in part** -- the Williams' claim for bad faith is **DISMISSED** rendering the motion **MOOT** as to that claim and summary judgment is **DENIED** as to the Williams' breach of contract claim.

**DONE** and **ORDERED** this the **5th** day of **May 2023.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**